Case No. 14-1085 et al., American Transmission Systems, Inc. et al. Petitioners v. Federal Energy Regulatory Commission. Mr. Jaffe for the petitioners, Ms. Perry for the responder. Mr. Jaffe for the petitioners, Ms. Perry for the responder. Good morning. May it please the Court, I'm Kenneth Jaffe on behalf of American Transmission Systems, Incorporated and Public Service Electric and Gas. Since this case presents essentially the same issue as the last one, I would like to begin and probably end by correcting two misimpressions from the last argument and confirming one correct impression. The two misimpressions are the misimpression that the Mobile CR doctrine does not, by the terms that the Supreme Court has described it, apply both to rates and non-rates. I would also like to correct the misimpression that the contract provision here, the reservation by the PJM utilities of their existing construction rights, is an anti-competitive combination among horizontal competitors. And I would like to confirm the impression that FERC failed to apply the Mobile Sierra test as the Supreme Court described it. On the first issue, as far as rates are concerned, I'd first like to point out, FERC did not base its ruling below on the notion that the Mobile Sierra doctrine applies only to rates. So under Chenery, that can't say. Does Chenery apply? You've told us that this is just a novel review by us of what the Supreme Court means. I don't know how Chenery can apply if they don't have any discretion to make the decision that's de novo review. Regardless of whether you need to defer to them, Your Honor, they did make a decision. And in fact, they were explicit in their ruling. And you can find this on page— No, but you are the petitioners. You've made an argument. And you say this is de novo review by the D.C. Circuit of whether the Supreme Court precedent requires application of Mobile Sierra. That's how I understood your arguments, including your standard of review section. And if we were to say—just hypothetically—if we were to say we think you're incorrect about Mobile Sierra, it does not apply by its terms outside this context. I don't see how it's a Chenery problem when you've told us it's for us to decide de novo. Maybe I'm wrong, but I really don't quite get how that works. Your Honor, we respectfully submit that Chenery still applies even when the Court does not have to defer to FERC. Do you have a case where it's been applied to something that we decide de novo and the only issue is the interpretation of Supreme Court precedent? I don't have that case at the tip of my fingertip, Your Honor. But moving on, it is noteworthy that in the orders below, FERC explicitly said that the Mobile Sierra doctrine applies to rates, terms, and conditions of valid contract. It said that on page 76 of the Joint Appendix. And it was also correct, as Judge Wilkins noted, that the only reason we're here—the only reason FERC has any jurisdiction at all over these construction rights is because this Court determined in the South Carolina case that they are closely connected to rates. I think they said they affect rates. I believe it was closely affect or directly affect because the CAISO governance case says that an indirect affect is not sufficient. So there needs to be a close connection. I would also note that FERC, on brief, both here and in the Oklahoma case, concedes that its ruling below recognized that Mobile Sierra applies both to rates and non-rate conditions. And I'd also point to the language of the Supreme Court itself, going back to the Mobile Gas case, where the court said that the respect for contracts that is reflected in the Mobile Sierra doctrine applies to the—that the limitation on the Commission's review to the power to review rates and contracts made in the first instance by pipelines or public utilities. I believe that's on page 341 of the Mobile Gas case. And finally on this point, if I could refer this Court to the Atlantic City Electric case, based in 2002, where this Court recognized that Mobile Sierra applied to provisions of the PJM tariff and agreements that allocated responsibility among the PJM utilities and PJM. Now, to be sure, the issue wasn't exactly the same as this. It concerned the right to submit filings under Section 205 of the Power Act, but it was a non-rate term relating to the allocation of responsibilities among the parties. With respect to the second misconception, the Supreme Court said explicitly that in the Morgan Stanley case that Mobile Sierra applies to all valid contracts unless the parties have opted out of it. The Court said Mobile Sierra, and I'm quoting, is the default rule, close quotes, unless the parties opt out of it. It didn't say that it only applies to certain types of contracts, that multilateral contracts among utilities are not covered. And as I noted, Atlantic City involved a multilateral agreement among the PJM companies and PJM. A multilateral, and I guess the notion that this contract, including specifically the reservation of construction rights, is somehow anti-competitive, an attempt to exclude competitors of the original utilities, is just wrong. So Judge Posner just blew it on that? Because, I mean, you can say that. He said that's different from a contract in which the parties are seeking to protect themselves from competition from third parties. Cartels are the classic example of such contracts. That's how he described the basic right. If that was how he described the Midwest ISO agreement, I would concede that that agreement is similar to this one. But yes, Your Honor, Judge Posner was wrong. And he was wrong because he proceeded from that assumption as though to rule as though the Mobile Sierra Doctrine was limited to the facts of the Sierra Pacific case, that only if there is a challenge. I'm on a slightly different point, which is, was he wrong to characterize it that way? He went into, and he knows his antitrust. He went into, no one likes to be competed against. Affirm, bless for the right of first refusal. Can exclude competition by exercising its option. All that's very problematic from his perspective, and therefore, as he said, but why? The owners have made no effort to show that the right is in the public interest. So my question is just on the facts there. Is he wrong to think, to describe it that way? Certainly, he was wrong if that characterization of describing, he was not wrong to say that cartels aren't disfavored. But this was not an agreement to form a cartel. This was an agreement to take where there were a group of utilities, each of which had a franchise monopoly in its territory. And what they agreed to do was open up competition to transfer portions of their responsibilities to a new independent entity. In an agreement, I point out that FERC accepted as just and reasonable, but that's beside the point. But this new entity was going to exercise responsibilities that formerly each of these utilities exercised on its own with no oversight at all by FERC. And the right of what FERC calls the right of first refusal, we think it's more accurate to call it the construction right, was a critical part of this. Because while PJM got the responsibility to plan the transmission system, that is to decide what new lines and substations were needed and where and when, it didn't have the wherewithal to build them. It relied on the transmission owners to do that. And so the transmission owners said, well, okay, we're the ones creating it. We have responsibility to make sure this works. We have the right and responsibility to build what you tell us to build. That is pro-competitive. It is not anti-competitive. And there was no restriction on others building. We're saying when you say we need, if they were to tell my client, American Transmission Systems, there's a new line needed in your territory, otherwise reliability will suffer. We step up and we build it. That is to make the whole thing work. But why is it pro-competitive if your client has a right of first refusal and somebody else wants to build it? I mean, the membership agreement sets in place a mechanism whereby PJM can or the RTO can say this needs to be built, but why does it matter who builds it? It matters, Your Honor, because as we've now seen in the year or two since FERC's new regime has come into place, deciding who builds it is a complicated, litigious process. And as a lawyer involved in that process, I'm not too upset about that. But the fact remains that the utilities and PJM who are forming this, when PJM said we need you to build it, it said we need you to build it by a time certain. Otherwise, there's an increased risk that the lights will go out. So having one entity in each area to look to and to assign the obligation to build that, the concomitant right is a small price to pay to make this whole thing work. And the record in this case is that it has worked extremely well. FERC did not point to a single thing that suggests that the public interest has not been well served. We told FERC. Well, that's not fair. They've got other companies coming and saying we'd like to do it. We'd like to be able to build these things. We think we can do them efficiently. And the only reason we're not allowed to do it is because we don't have the right. Someone has a right of first refusal. That's not good for efficient markets. That's their vision of the record. And that was the South Carolina case, Your Honor, where this court said that that was a valid basis for FERC as a general matter to proscribe construction rights. But FERC did not find, and this court reserved the question of whether contract rights had a role in that. FERC did not suggest in that case that the record was adequate to address the Mobile Sierra question of whether the existence of the contract rights so severely harmed the public interest that they create an unequivocal public necessity to eliminate those rights. In fact, FERC explicitly said that the record is inadequate for it to make that determination. If you won here, that's what would happen. It would go back to FERC to make that evaluation. It would go back to FERC to make that evaluation. And we think we would win. But that's not the issue here, because from short, you're going to have to process it. And your point a second ago was about people gave up things as part of this agreement, and one of the things they got in return was the right of first refusal. That's one of my points, Your Honor, but it's more than that. Okay. It's not simply that the right of first, and again, we don't like calling it a right of first refusal, because it's not the case that someone else could come in with a better mousetrap and we could just take it away from them. It is a right and obligation to build what PJM tells us to build. But you had more than that. It's more than that. It's more than that because the commitment of the transmission owners to build what PJM tells them, it's not a bug. It's a feature. It's something that makes the whole regional market work, because PJM can be assured that the system will remain reliable, even though what was formerly a unitary, vertically integrated process has now been split up, and an independent entity is now in control of it. The theory I think FERC has is the more competition, the better, which is usually a correct theory of economics. I'm not going to re-argue that case generally, Your Honor. I think what is open is the question of whether that notion is sufficient under the public interest test, a question that FERC completely ignored here by creating additional roadblocks to the implementation of Mobile Sierra in the first instance. First, they did the public interest in essence through the back door on the arm's length point.  I mean, they did it without having the burden that you think they should have. But they certainly analyzed things, and so I'm not – they analyzed things that seemed like the same things they would analyze if they were doing the public interest analysis. Well, I would submit they did not. I think one of the things the public interest has to take into account is the stabilizing importance of contract rights and respect for those. And this court, in fact, recognized that in the Wisconsin public power case in 2007 where FERC did, in fact, consider the stabilizing effect, the importance to the negotiation. I mean, that's obviously the baseline on which they're – against which they're assessing this, which is – that's kind of obvious. There's a contract, and we don't like, as a general matter, to disrupt contracts, but we don't like this provision of the contract because it does something that we think is – We concede, Your Honor, that if FERC goes back, because you direct them to actually apply Mobile Sierra rather than ignore it, that in considering the public interest question, FERC can take into account its views of the better way to do regional planning and construction. We don't dispute that. We would hope to show that the evidence in this case is that the existing regime or the previously existing regime does serve the public interest, and it – disrupting it does not – there is no serious harm to the public interest, no unequivocal public necessity that requires disrupting it. Now, in that – speaking of disruption, what disruption happened to your agreements here? Well, the disruption that's happened to our agreements, obviously, is the transmission owners, as Judge Kavanaugh said, lost a bargain for right. No, they didn't. The Commission said – actually blessed your agreements, said nothing had to be removed. They're in compliance with Order 1000. And so there is no right of first refusal other than the little edit to 1.5.6, which you've never challenged. Your Honor, with respect, that isn't right. What FERC did was it directed PJM to take out anything in the agreements that might be read or interpreted. And FERC and PJM changed slews of provisions. No, I think it only deleted what came in for – in the compliance proceeding and said we're taking out one line out of 1.5.6 that FERC had already held, didn't create a right of first refusal anyhow. And the other thing it did, Your Honor, in addition to making changes in Schedule 12 of the PJM tariff, which I happen to have been involved in, it also established a whole new process for the assignment of responsibility, a competition kind of with open windows and the like, that is completely antithetical. I don't understand where that is in their decision. I read their decision, their clarification order. They say you don't have to change – PJM came in, took out one line out of 1.5.6, and they said we hereby bless these. We don't see any rights of first refusal that violate Order 1000. And you never challenged that. What they were looking at, Your Honor, was the world after PJM's compliance filing, where PJM had created a whole new procedure that left whatever provision – Where did it create – all they said was we took out one line out of 1.5.6. I don't know where this whole procedure is. Your Honor, they didn't need to address the particulars because they accepted them. But in other portions of the decision, they addressed things like exceptions PJM made to the process, such as for near-term needs. That was all part of a – Was that part of a right of first refusal provision? It is, Your Honor. Which section was that? What section of the agreement? Well, it's in Schedule 6 of the PJM operating agreement, provisions of which we relied on to establish our rights. I think, Your Honor, the important – Do you have a list somewhere in your brief of what those provisions are? Yes. Our brief, Your Honor, refers both to provisions of the Transmission Owners Agreement and the operating agreement. I believe it's around pages 9 to 11 or so of our brief. But we don't go into those in detail. No, you don't argue about that they created a right of first refusal at all. You don't challenge that decision. No, we don't, Your Honor, because FERC's interpretation of those provisions was not what it rested on. Is this in the argument section of your brief or the background section? It's in the background section because, as I said, Your Honor, FERC did not rest its decision on interpretation. Its appellate counsel now claims that it did in its attempt to question the court's jurisdiction. But if you look at what FERC actually said its ruling was based on, and you can find this on – Well, we look at all the decisions. We don't just look at the original one. We look at the rehearing order, which also included the clarification order, at which point they said – I think looking at the rehearing order would be extremely instructive, Your Honor, because on page 150 and 151 of the joint appendix, as is its want, FERC summarizes the basis of its ruling on the Mobile Sierra issue. And what FERC says is we believe we have the discretion to decide not to apply Mobile Sierra to this contract. And we base that on our view of what Morgan Stanley and NRG require. And then it goes on for seven single-spaced pages to attempt to defend what we think is indefensible. Nowhere. No, I understand that they spent a lot of time talking about whether Mobile Sierra should or should not – interview should not apply here. But to be injured, you have to have a right of first refusal that you lost as a result of this compliance proceeding. And we did, Your Honor. And I don't see that. And that right of first refusal is inherent both in provisions of the ownership agreement, in particular section 5.6 and 5.2 of the ownership agreement, which we've referred to generally in our pleadings to FERC around JA 6 and 7, if I recall. That's also inherent in provisions of the operating agreement. You did raise 5.2 in the compliance order proceedings, the rehearing request, the clarification order, and it's just in the background here. I just don't see arguments that this contract – I see a ruling from FERC at the rehearing stage that there are no – these orders, after the deletion of one line out of 1.5.6, are in full compliance with Order 1000. No disruption. Your agreements go forward exactly as planned. And with respect to the 1.5.6, they said that was never a right of first refusal anyhow. And they might be right or wrong about that contract interpretation issue, but you haven't challenged that. Your Honor, with all respect, that isn't what they ruled. That's what they now claim they ruled. In fact, FERC specifically said – and again, you don't need to reconstruct this because FERC summarized it all in the rehearing order. It described that it said specifically that provisions of the contracts may be read or interpreted to create rights of first refusal, and PJM has to delete them. And then on page 158, FERC said it refused to rule on an argument by PJM that the provisions do not constitute a right of first refusal. FERC simply did – Well, I'm reading 157, 158. I'm in both, Your Honor. First on 157. So here's my language, and you tell me why I'm wrong with it. We grant PJM's clarification. We find the directive in the first compliance order to remove or revise any provision that could be read as granting a federal right of first refusal does not require PJM to remove or revise the reliability default provisions that obligate an incumbent transition owner to build, which is what you were talking about is the whole thing at issue here. We don't have to remove it. So you don't have to address the alternative request, right? We don't need to do it. We said you don't have to remove this provision about your right and obligation to build. Is it still in the contracts? FERC's reasoning there is that that provision itself, by its terms, says that there is an obligation to build. It doesn't speak explicitly to the right to build. And FERC said, well, we don't care. We want you to have the right. Excuse me, we want you to have the obligation. We want you on the hook. We just don't want you to have the concomitant right. They've interpreted the contract, which they do, as not creating a right of first refusal. It's just an obligation to build. They didn't do that. But they did, and this goes, they don't repeat it here. You have to go back, unfortunately, to the original order. I believe it's around JA75. They never interpreted it. What they said is, well, in this primary power case, which did involve the interpretation of the agreement with respect to a subclass of projects. I hate to use jargon here, but it's the so-called economic project. With respect to that case, they did interpret it. And they ruled that for economic projects, it did not create a right of first refusal. FERC managed to escape review of that in the PSED case here. So that was never reviewed. So what FERC said is, well, you shouldn't read a negative pregnant into that. The fact that we found there to be no right of first refusal for economic projects doesn't necessarily mean you have rights of first refusal for other projects. Right. Okay, so it doesn't necessarily mean. And they said, well, in Order 1000, we said that provisions that give you an obligation to build don't necessarily give you a right. They're two different things. Again, necessarily. But remember, in Order 1000, FERC explicitly said we're not going to rule on Mobile Sierra. We don't have an adequate record to do it. So all we have is a contingent ruling saying, well, we don't necessarily rule. What is missing, nowhere in this agreement, is anything like the seven pages FERC spent on their legal interpretation of taking apart or addressing our argument that read in context, in the context of this agreement and the parties' negotiations, that the obligation to build does include a concomitant right. So they failed to answer a contract argument that you raised. Correct? Yes. With respect to this. That is correct, Your Honor. They failed to answer it because for them it was irrelevant to their ruling. They said we either find or assume that there are rights of first refusal and they cannot stand under Mobile Sierra. And that ruling is legally infirm of the reasons we explained in our brief. No, but then when you sought re-hearing, you said you're wrong on Mobile Sierra, but you didn't say, by the way, you need to recognize what this contract means. You were wrong to think that right not to build is not a right of first refusal, at least in this setting. You're wrong, and we made this argument. You didn't answer it. But that wasn't in your re-hearing petition, and it's not in your opening brief, and I don't know what to do about it. Because it wasn't the basis of FERC's ruling. No, but it's a complaint you have with their ruling because here's what happened. By the time you have this re-hearing order, you don't have a complaint with the ruling on that basis, Your Honor. I think I am forced to say that if you remand, as I believe you must, for FERC's failure to apply the Mobile Sierra doctrine correctly, it would then be open to FERC to address the interpretation question that was initially raised. But since that was not part of their ruling here, we, I submit, did not have to challenge it. I mean, this Court has been very clear, I'm thinking back to I think it was an East Texas Utilities case, that if FERC is going to assert that it made a ruling that somebody failed to challenge, and on that basis the Court lacks jurisdiction, FERC has to be very clear about what its ruling is and that it is resting on that. And I do not think it is at all conceivable to say that FERC did that here. But why is it appropriate for us to assume jurisdiction and reach the merits? It is appropriate to assume jurisdiction. That's never appropriate for us. Well, we don't need to assume jurisdiction. I think this Court clearly has jurisdiction. We were aggrieved by FERC's directive to PJM and PJM's compliance with that directive to modify provisions of the agreement that say that we are no longer the prime builders. We don't longer have the right to build what PJM plans. Instead, it's an open process that has taken on a life of its own. That clearly aggrieves us, we submit, Your Honor, and establishes this Court's jurisdiction to review the basis for that ruling, which is FERC's misapplication of the legal standard articulated in Mobile Sierra. Go ahead. If, let's just assume, if there is no right of first refusal in your agreements, I know you don't agree with that, but assume that were to be a legal determination, what capacity would we have to decide the Mobile Sierra question in this case? If that were the case, if FERC were to make that ruling on remand, we would lose. But FERC never reached that. FERC said we don't have to decide that because even if you do have one, even whatever rights you have under this agreement are not protected by Mobile Sierra. We don't have to find they do serious harm to the public interest. PJM changed them. PJM did. Why wouldn't we remand just to ask the question? I submit that would be, if you're going to remand, as I hope you will, I would think you would ask two questions, Your Honor. Why wouldn't we remand just to ask that one question? Well, I submit that that might not fit with judicial economy. That would be one question to ask at the same time we think it would be appropriate because in case FERC agrees with us when it finally addresses the merits, then it has to address the public interest question. It would seem that it should do both. I'm sorry. Why wouldn't you as a proponent of Mobile Sierra protection of a right to first refusal have the predicate obligation to show that you have a right of first refusal to be protected by Mobile Sierra? We believe we did, Your Honor. FERC didn't address that. Okay, but not at re-hearing and not before this Court. Again, since FERC didn't address it, we were challenging FERC's ruling, and FERC's ruling was not premised on interpretation. We didn't challenge the clarification order. Well, the clarification order didn't hurt us. It didn't. It left its place. Because it said any. It didn't specify. And it left in place the provision that we build our case on, or one of them. So how are we aggrieved by something that left it in place? We were aggrieved by an outcome, not a rationale. And the outcome was the provision is still there. Why don't we hear from the commission? Thank you. Thank you, Your Honor. Good morning, Your Honors. My name is Lona Perry for the commission. It is simply not the case that the commission did not make findings on the provisions that they relied upon as the rights of first refusal. I would direct your attention in the first place to the compliance order at Joint Appendix 67, Paragraph 178. The commission states there, We start by addressing the issue of whether Mobile Sierra protection applies to the provisions that indicated PGM transmission owners contend include a right of first refusal. Specific arguments regarding whether those provisions are properly read as including a federal right of first refusal are addressed in the following section. In the section following the one- I'm sorry, where are you reading from? I missed- I didn't hear you. I'm sorry. I didn't hear you. Paragraph 178. In Paragraph 178, Your Honor. I'm looking for a page, okay.  Sorry, I thought it was Paragraph 178. And so there is the section discussing Mobile Sierra, and in the section immediately following that, as the commission stated, there are specific arguments addressed about whether they, in fact, do have a right of first refusal. In those paragraphs, which it starts at Paragraph 221, Joint Appendix 74, goes through Paragraph 223 on Joint Appendix 75, they address the specific provisions that the petitioner is now attempting to rely on. In the first place, most notably, as to the transmission owners agreement, in Paragraph 223, the commission rejected the argument that the petitioners had made that because they had an obligation to construct, that meant that they had a right of first refusal. Now, the petitioners didn't make any arguments whatsoever in their opening brief about the operating agreement. But the commission in this order interpreted Section 1.5.6.F, which Your Honor was referring to earlier, and noted that it was reaffirming its decision in primary power that 1.5.6.F did not create a right of first refusal. And as Your Honor pointed out, when PJM came in on compliance and said, we are not removing 4.2.1 because it's not a right of first refusal, which the commission granted clarification of, PJM said, we are removing one sentence of 1.5.6.F. The commission had found this is not a right of first refusal, but the commission had found that it was an ambiguous provision. Are you on JA 157 now? Yes, Your Honor, I'm rehearing. JA 158, is that where you? We find that the directive in the first compliance order to remove or revise any provision that could be read as granting a federal right of first refusal does not require PJM to remove or revise the reliability default provisions that obligate an incumbent transmission owner to build. Is that the sentence? That's the sentence, Your Honor. And I'll note that it specifically refers— It's kind of a roundabout way of doing what you just said. Well, Your Honor, it specifically goes to section 4.2.1 and 1.7 of the operating agreements. Because if you look at footnote 250 at JA 169, refers to footnote 229 at JA 168, where the commission sets out which provision specifically it is talking about, and that is 4.2.1 of the transmission owner's agreement and 1.7 of the operating agreement. And those are the specific provisions that the commission is finding do not have to be removed from the agreements because they are not rights of first refusal. They say inherent in the agreement is a right of first refusal. I think they said that. Your Honor, they have to say inherent in the agreement is a right of first refusal because they don't have anything that says that. Because it's not explicit. Yeah, inherent. I agree, but that's what they say, and that the response by FERC was to actually address the Mobile Sierra presumption on it directly. Absolutely, Your Honor. The commission addressed Mobile Sierra directly, but it also— Why didn't the commission just say that's irrelevant here because there is no federal right of first refusal? Well, in the first place, Your Honor— I mean, no right of first refusal in this agreement. The commission did both in this case, and this is an unusual case because in other cases— You understand that—am I correct? The commission, under your theory, could have just said, we're asked to decide something that's not present here because the agreement does not have a right of first refusal and— And stop. Said that first rather than last. Before the commission, in their compliance filing— Can you just answer my question? The commission could have said that, correct? Well, what I'm explaining, Your Honor, is in the compliance filing that the petitioners originally made, they raised a number of provisions, all of which they claimed had some right of first refusal. And may have. And the commission addressed certain of them in the compliance order. The rest of them were never raised again on rehearing. They were never raised before this court on brief. And so there is no issue about that. I just was looking for a nice, clean sentence that said, we find that there's no right of first refusal in this agreement. Well, and what I'm saying, Your Honor, is— Is there a sentence like that? Is the word— There is a sentence in this order that says the provisions on which they are currently relying, the provisions that they have cited to this court, and that they raised on rehearing, are not rights of first refusal. I understand that. There is no sentence that says what I suggested. Because their argument—and this may be a bad argument— but their argument is, even if there's no express provision implicit in this whole structure, is a right of first refusal inherent. But see, that is precisely— You think that's crazy. I understand that. But that's their theory, and the Commission doesn't say, that's crazy, there is no right of first refusal. Instead, the Commission spends paragraph after paragraph analyzing the issue we discussed on the merits in the last case. It does that as well, Your Honor. But that argument, the inherent argument, is precisely the argument that the Commission was addressing with respect to 4.2.1, that just because you have an obligation to bill doesn't mean that you automatically have a right of first refusal. And in that regard— I'm sorry, just to clear up one thing. Did they ever argue to the Commission that, apart from the right to build, or not entirely grounded in the right to build, but grounded in the contract as a whole, the structure of the contract as a whole, there is a right of first refusal? Their argument to the Commission was that it was inherent in their agreeing to take on the obligation to build that they would retain the right to build. That was the argument that they made to the Commission, and that was the argument that the Commission was responding to. In that regard, I would point out that if you compare what they—Section 4.2.1 in this case, which is that you can see in Joint Appendix, page 24, to, for example, the right of first refusal that's at issue in the prior case, in the Southwest Power Pool case, which you can see at the petitioner's brief in that case at page 11, that the Southwest Power Pool provision says if a project forms a connection between facilities of a single transmission owner, that transmission owner will be designated. Why should we—if you're right on this, isn't the better course for us— because I think there's at least some uncertainty— simply to remand the Commission to ask the question, how do you interpret this? Do you interpret it to have a right of first refusal or not? If you say no, then they can come argue about that. Isn't that as a matter of fairness and efficiency, both the proper way—a proper way to go, not the aproper way to go here? What's wrong with that? No, no. What's wrong with that, Your Honor, is if you look at every single provision they cited in their brief, if you look at— You think you've already done that, but somehow I can't find the sentence where you've done that. I've cited the sentences, too, Your Honor. I would cite— Well, I'll look at them. You don't have to recite them. I understand. They are specific to— and on the clarification, you have to look at the footnotes to see that it's specific to 4.2.1, but it is there. I love the footnotes. You know that. Absolutely, Your Honor. You have to follow the trail, but it is specific to that provision. The other problem is, at least in the initial order, you acknowledge that these provisions are ambiguous, and that was the basis on which you had this Order 1000+, which is don't just delete rights of first refusal. Delete anything that someone might construe as a right of first refusal. And so I guess it does seem to be some disconnect between the ambiguity as to what these contract provisions provided that was the very predicate for launching into Mobile Sierra that you have in the initial decision, and then the sort of backing in through a clarification order to say what? There's never been any right of refusal at all. Did the clarification order present the contract interpretation question that would eliminate the ambiguity that you found in the initial order? The ambiguity, Your Honor, and actually you can see this if you look at this Court's decision in Public Service Electric and Gas v. FERC, 783 F.312.73. What was ambiguous was Section 1.5.6.F, and PJM solved that ambiguity by deleting that one sentence. No, no, no. On page 75 of your initial decision, you talk about these provisions, plural, of both the OATT and the agreements that could be read as supplying a federal right of first refusal for transmission projects. So that's more than one. That's plural, and it's in the both sets of agreements that are at issue here. So you found ambiguity here, and so I'm then confused about how at the clarification stage that ambiguity disappeared without explanation. Well, what the direction was to PJM was clarify any provision that is ambiguous, and what PJM did was come back on compliance. The Commission first found that more than one was ambiguous. It found that these things are all ambiguous. If I'm JA-75, we find that these provisions, not one, these provisions are ambiguous and open to interpretation, and we direct them to revise the provisions, plural, that could be read as creating a right of first refusal. So am I just misunderstanding? It sounds to me on page JA-75 like the Commission is finding ambiguity as to whether these create rights of first refusal. What the Commission is doing is directing PJM to consider all of the provisions and change any of them that are ambiguous. That's the follow-on. After it finds ambiguity, then it directs PJM. It doesn't say PJM thinks they're ambiguous, and so PJM should fix it. It says the Commission finds these to be ambiguous, so PJM, you go fix it. Am I misreading that? That is what the Commission held, and then it does in that same paragraph go on to talk about 1.5.6f. And if you look at the Court's decision in Public Service, Electric, and Gas, there is a discussion about the fact that 1.5.6f was found ambiguous in the primary power proceeding and that that prompted the direction for PJM to clarify the provisions. But in any event, Your Honor, I wouldn't say that it would be necessary for you, if you are concerned about the right of first refusal issue, to remand to the Commission. Unnecessary is appropriate, or put another way, do you think it's inappropriate? You can affirm the Commission, Your Honor, if you find that even if there are rights of first refusal, the Commission properly concluded that the Mobile Sierra doctrine would not apply. Can I ask you a couple questions on the merits, too, just to supplement your co-counsel from the prior case? So one of the Petitioner's Council's arguments was this was really a bargain for contract. Give and take, things were given up, rights were received. One of the rights that was received was the right of first refusal, and, therefore, it's a mistake to say it's not arm's length, and it's also a mistake to think of it just as a single provision in isolation and, therefore, just apply the usual presumption. If you say it's anti-competitive, go through the public interest analysis. What's wrong with that? What's wrong with that, Your Honor, is this agreement is identical in the relevant respects to the one that the Seventh Circuit was looking at in the Midwest Independent System Operator case, and the point is that. . . The theory is that the Seventh Circuit, or their theory is, regardless of what the Seventh Circuit said, this is a contract with businesses that are giving things up and getting things in return in a contract negotiation, and, therefore, FERC shouldn't have, and then to pick up on, I think, what Petitioner's Counsel said in a rebuttal in the prior argument, FERC shouldn't have free reign to just come in and upset those contract rights, at least without going through the usual analysis of public interest. This contract, Your Honor, it's important to bear in mind, is like the one that was at issue in the Seventh Circuit, solely among the transmission owners, and the point that the Seventh Circuit made was they all have a common interest in agreeing to that. They're not giving anything up to make this agreement. They all want a right of first refusal. There's the new entity that's created, correct me if I'm wrong, that's going to have some of the controlling authority that each of the individual entities used to have in their own regions. Is that correct? So they're giving up some of that authority? What they're doing, Your Honor, in terms of preserving to themselves the right to construct, they all have a common interest in that, and there's no one involved in the bargain who has any incentive to bargain against that. Nobody is giving anything up or getting anything. They all have a single common interest in that particular decision. With these regional entities that were created, the individual entities that joined them were giving up some of the authority they previously had, correct? And before they did that, again, correct me if I'm wrong, they wanted something, and one of the things they got was or bargained for was for a right of first refusal. And you're saying they're just bargaining with themselves. Well, Your Honor, literally they are bargaining with themselves because this was a 1997 agreement that was entered into solely among the transmission owners for the purpose of creating the independent system operator. The independent system operator didn't exist in June of 1997 when they signed this contract. It wasn't even conditionally approved until November of 1997. So they literally were bargaining with no one but themselves, and this is exactly the same situation. If that's all true, and I take your point, it's very easy for FERC to come in and say that's not in the public interest, so they lose, as opposed to us creating doctrines where the presumption applies and then it doesn't apply and it might apply. Their point, I think, and the prior petitioner's point is let's just have a simple doctrine where contracts are given protection. FERC can upset those contracts when they go through the public interest analysis. That's a clean, simple rule. What's wrong with that? What's wrong with that, Your Honor, is the commission looked at Morgan Stanley, and Morgan Stanley quite plainly says if there is reason to doubt that the premise underlying Mobile Sierra exists, that there were fair arms-length negotiations, the commission should not presume that the contract is just and reasonable. On the arms-length point, though, weren't they referring to something a little, you know, traditional contract law exceptions? I don't think they're referring to something like this necessarily. I guess that's the ambiguity. We don't know what they're referring to. Well, not at all, Your Honor. If you look at page 547 in Morgan Stanley, the court starts out with the to-be-sure. FERC has authority to set aside contracts where there are traditional grounds for abrogation such as fraud or duress. They go on to say, in addition, if there are problems with the negotiations caused by the illegal action of one of the parties, FERC should not apply the Mobile Sierra presumption. They're talking about setting a— I'm sorry. I'm sorry. Is it page 547? Yeah, there. Okay. In addition— So what they're saying is, yes, you can set aside a contract for these traditional grounds of abrogation, but then there's no contract. There's no issue about whether Mobile Sierra applies. But they go on to say, if there is reason to question what happened in the negotiations, you still have a valid contract. They don't say that. They say it was caused by illegal action of one of the parties. But you have to remember, they're talking about illegal action that was in another market, but they're just talking about illegal action that affected the contract negotiations. And you can see this at 554 to 555. And so what they're saying is, if you have reason to question what happened in the negotiations because of activity in another— it doesn't invalidate the contract. You still have a contract. You just should not presume that that contract is just and reasonable. And the commission interpreted this as being a directive that in the event that you have a circumstance where you have reason to think that the premise underlying the Mobile Sierra doctrine does not apply, the commission should not apply the presumption in the first case. And you never get to the issue of whether it's contrary to the public interest or not. Okay. All right. We've heard your argument on the merits and Mr. Fulton's as well, so I think we have that covered. Thank you. Thank you. And we'll hear rebuttal for a couple minutes. Your Honor, I'd just like to make two quick points since we have been hearing a lot about this. First, with all due respect to FERC counsel, the court in Morgan Stanley did not say that FERC is free to inquire into whether the premises of the Mobile Sierra presumption are applicable in every single case. What they said, as Judge Kavanaugh noted, was that if there is illegal activity, and this was a market manipulation case, they said market dysfunction is not enough to deny application of the public, of the presumption of justness and reasonableness. It's only if market dysfunction is due to illegal activity. There is nothing that suggests that a group of utilities sitting in rooms in the Hotel DuPont for months on end, as I can recall, to negotiate the terms of creating an independent system operator to meet FERC's nondiscrimination objectives is in any way illegal or improper. It is not even anti-competitive, as I discussed at length. If it were the case that FERC could inquire in every instance as to whether the premises of sufficient arm's-length negotiation, what the court called the common-sense notion underlying Mobile Sierra, if they could inquire in every case whether that applied, that is the very opposite of a presumption. You're no longer presuming a contract is just and reasonable. You have to prove it in every case. That's not what Weinstein says a presumption is all about. Final point. Our position on the contract is not that there's some brooding omnipresence that it's inherited. There are specific provisions of the Transmission Owners Agreement and the Operating Agreement that, read together, in the circumstance of their negotiation and filing with FERC, that create both the right and obligation to construct. As I discussed at length, FERC never addressed that argument in this case. But it's not simply a gestalt, a brooding omnipresence. It's specific provisions. There's nothing as specific as we see in some of the other agreements, correct? Well, there are some specific provisions. There are specific provisions, but as specific. I would suggest that if you look, for example, as FERC did not do at the provisions of the Transmission Owners Agreement, where they specifically say, we reserve all rights we do not specifically give to PJM, including the right to build our facilities, as well as own, merge, et cetera. It's not a long leap to say that we are reserving the right to construct what PJM directs us to build. Which provision is that? It's in the appendix. Is that the Operators Agreement or the? Sorry, it's the Transmission Owners Agreement. Consolidated transmission. Which section of it? 5.2 and 5.6 together. Okay. Thank you. The case is submitted.
judges: Kavanaugh, Millett, Wilkins